FILED
2016 May-18  AM 10:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED MINE WORKERS OF AMERICA 1974 PENSION PLAN AND TRUST, et al., | } } } } | |
| Appellants, | } } | |
| v. | } } | Case No.:  2:16-cv-00057-RDP |
| WALTER ENERGY, INC., et al., | } } } | |
| Appellees. | } | |

## MEMORANDUM OPINION

### I.    Introduction

This case is before the court on an appeal from the United States Bankruptcy Court for the Northern District of Alabama's December 28, 2015 Memorandum Opinion and Order Granting Debtors' Motion for an Order Authorizing the Debtors to (A) Reject Collective Bargaining Agreements, (B) Implement Final Labor Proposals, and (C) Terminate Retiree Benefits; and Granting Related Relief (the "1113/1114 Order") (Doc. # 1-3).[1]  Appellants[2] raise arguments regarding the reach of 11 U.S.C. §§ 1113 and 1114, and whether the Bankruptcy Court properly applied those statutes when ordering the termination and modification of Debtors-Appellees' collective bargaining agreement ("CBA") with non-party United Mine Workers of America ("UMWA"), and obligations to Appellants under the Coal Industry Retiree Health

---

[1] The 1113/1114 Order is also available as *In re Walter Energy, Inc.*, 542 B.R. 859 (Bankr. N.D. Ala. 2015), and is located at (Doc. # 17-4 A258-A314).

[2] Because the Coal Act Funds (defined herein) are appealing the 1113/1114 Order, they will be referred to interchangeably in this opinion as "Appellants" and "Coal Act Funds."

Benefit Act, 26 U.S.C. §§ 9701-9724 (the "Coal Act").  Specifically, this court must determine the following four issues:

1.  Whether the phrase "necessary to permit the reorganization of the debtor," contained in Sections 1113 and 1114, allows a debtor to avoid benefit obligations in a Chapter 11 plan of liquidation.

2.  Whether Coal Act obligations may be modified or terminated under Section 1114.

3.  Whether the Tax Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421, acts as a jurisdictional bar to the Bankruptcy Court's modification of Coal Act obligations pursuant to Section 1114.

4.  Whether Debtors obeyed the proper procedure and substantive requirements of Section 1113, thereby allowing the Bankruptcy Court to order a rejection of their CBA with the UMWA.

This appeal is fully briefed, and the relevant record has been transmitted.  (Docs. # 17, 28, 29, 34; *see also* Docs. # 35, 37).  The court heard oral argument on February 1, 2016 concerning the request for a stay pending appeal in this and related appeals.  Because the parties addressed many of the issues presented here at that argument, and the parties' briefs suffice in other regards, the court does not find it necessary to hold a hearing related to this appeal.  After careful review, and for the following reasons, this court concludes that the Bankruptcy Court is due to be affirmed.

## II.    Background and Proceedings Below

The 1113/1114 Order terminated both the Debtors' CBA with the UMWA and obligations to make payments under the Coal Act and pursuant to four employee and retiree benefit plans established by CBAs.  These terminations set an end date to Debtor's obligations under those liabilities, and would prevent the proposed purchaser (and interested party in this appeal), Warrior Met Coal, LLC, f/k/a Coal Acquisition LLC ("Warrior Met"), from assuming them.

2

A.     The Coal Act

The Coal Act applies to Debtors.  This court has previously addressed the origin and

purpose of the Coal Act:

> The Coal Act requires present and former coal operators, such as the plaintiffs in
> this case, to pay for the health benefits of coal industry retirees and their
> dependents. 26 U.S.C. §§ 9702, 9704.  Congress passed the Coal Act in 1992 to
> ensure that retired coal miners and their dependents and widows continue to
> receive the lifetime health benefits guaranteed by earlier collective bargaining
> agreements with coal operators.  Before the Coal Act was passed, the two multi-
> employer health care plans that provided benefits to retired miners (the "Plans")
> were operating at a deficit. The financial instability of the Plans led to a
> breakdown in labor relations, the cessation of operator contributions to the Plans,
> and an eleven-month strike by mine workers.  *National Coal Association v.*
> *Chater*, 81 F.3d 1077, 1078-79 (11th Cir. 1996).  In an effort to remedy the
> funding problems yet maintain a privately financed program, Congress
> consolidated the Plans into the Combined Fund with financing primarily provided
> by coal operators.

*AJ Taft Coal Co., Inc. v. Barnhart*, 291 F. Supp. 2d 1290, 1295 (N. D. Ala. 2003).  In addition to

the Combined Fund, the Coal Act established the 1992 Plan (together the "Coal Act Funds").  26

U.S.C. § 9712.  The 1992 Plan provides benefits to two groups of retired coal miners: (1) those

otherwise eligible for Combined Fund benefits, but who retired after the cut-off date, and (2)

those whose former employers have failed to provide benefits under individual employer plans

("IEPs").  *Id.*  Any employer that provided healthcare benefits to retirees through an IEP as of

February 1, 1993, must continue to do so for as long as the employer remains in business.  *Id.* at

§ 9711(a).

The Coal Act Funds are funded primarily through statutorily required "premiums."  26

U.S.C. §§ 9704, 9711, 9712.  Combined Fund premiums are assessed against "assigned

operators," and those assigned operators' related persons and successors in interest are jointly

and severally liable.  *See id.* at §§ 9701(c), 9704(a), 9706.  The amount of the Combined Fund

assessment fluctuates annually, depending on the number of retirees and the premium rate set by

3

the Commissioner of Social Security. *Id.* at § 9704(a)-(b), (g). Under the 1992 Plan, Premiums are assessed monthly against "last signatory operators" (defined as the most recent coal industry employers of the retirees, including "related persons" and their successors in interest) based on the number of 1992 Plan beneficiaries assigned to that last signatory operator. *Id.* at §§ 9701(c), 9711(g), 9712(d)(2)-(4). If these funding schemes prove insufficient, Congress has created means for addressing shortfalls in Coal Act Funds premiums to be paid. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1276-77 (11th Cir. 2007) (explaining statutory backstop for retirees under Combined Fund); 26 U.S.C. § 9712 (allowing for transfer of moneys from other statutorily created Funds). Congress designed the Coal Act to protect against the "chance of the miners being denied their benefits" if an employer or signatory to a covered Plan goes bankrupt. *Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 821 (D.C. Cir. 2001).

## B.      Sections 1113 and 1114 of the Bankruptcy Code

Congress enacted Section 1113 in response to the Supreme Court's decision in *NLRB v. Bildisco & Bildisco*, 465 U.S. 513 (1984). *Wheeling-Pittsburg Steel Corp. v. United Steelworkers of Am.*, 791 F.2d 1074, 1089 (3d Cir. 1986). In *Bildisco*, the Supreme Court "held that a debtor may unilaterally reject a collective bargaining agreement under section 365(a) of the Bankruptcy Code by showing that the agreement 'burdens the estate, and that after careful scrutiny, the equities balance in favor of rejecting the labor contract.'" *In re AMR Corp.*, 477 B.R. 384, 405 (Bankr. S.D.N.Y. 2012) (quoting *Bildisco*, 465 U.S. at 526). Congress then enacted Section 1113 "to replace the *Bildisco* standard with one that was more sensitive to the national policy favoring collective bargaining agreements. . . ." *Wheeling-Pittsburgh*, 791 F.2d at 1089. It is intended "to ensure that well-informed and good faith agreements occur in the market place, not as part of the judicial process." *N.Y. Typographical Union No. 6 v. Maxwell*

4

*Newspapers, Inc. (In re Maxwell Newspapers, Inc.)*, 981 F.2d 85, 90 (2d Cir. 1992).  Section 1113 "requires that a debtor take a number of procedural steps prior to rejecting a [CBA]."  *AMR Corp.*, 477 B.R. at 406.

Section 1114 was adopted as part of the Retiree Benefits Bankruptcy Protection Act of 1988, Pub. L. No. 100-334, 102 Stat. 610, 613 (1988), and applies to all Chapter 11 cases commenced after June 16, 1988.  *In re N.Y. Trap Rock Corp.*, 126 B.R. 19, 21 (Bankr. S.D.N.Y. 1991).  Congress enacted it in response to the termination of the health and life insurance benefits of approximately 79,000 retirees in the LTV Corporation Chapter 11 bankruptcy.  *Id.; see LTV Steel Co., Inc. v. United Mine Workers of Am. (In re Chateaugay Corp.)*, 922 F.2d 86, 88-89 (2d Cir. 1990).  Pursuant to Section 1114, a Chapter 11 trustee or "a debtor in possession is required to continue to pay retiree benefits throughout reorganization under a 'plan, fund, or program' and at the levels maintained prior to the filing of the bankruptcy case, until or unless a modification is agreed to by the parties or ordered by the court."  *N.Y. Trap Rock*, 126 B.R. at 21-22.  The term "retiree benefits" is defined in Section 1114.  11 U.S.C. § 1114(a).  A court is required to appoint an "authorized representative" in accordance with Section 1114(c)(2) if a trustee or debtor in possession seeks to modify or terminate retiree benefits.  *N.Y. Trap Rock*, 126 B.R. at 22.  If no agreement results from negotiations between the trustee or debtor in possession and the retirees' authorized representative, the trustee or debtor in possession may move for a court-approved modification under Section 1114(g).  *Id.*

The statutory "requirements for modification of retiree benefits are . . . substantially the same as the requirements for rejection of collective bargaining agreements."  *In re Horizon Nat. Res. Co.*, 316 B.R. 268, 281 (Bankr. E.D. Ky. 2004).  Thus, courts (including the Bankruptcy Court here) routinely analyze motions for relief under Sections 1113 and 1114 simultaneously.

*See id.* at 280-81; (Doc. # 1-3 at 22).  In doing so, courts typically utilize a nine-part test which employs the statutory requirements in Sections 1113 and 1114 set forth in *In re American Provision Co.*, 44 B.R. 907, 909 (Bankr. D. Minn. 1984); *see also Horizon Nat. Res. Co.*, 316 B.R. at 281 (finding *American Provision* test equally applicable to Sections 1113 and 1114).

### C.     The Walter Energy Bankruptcy and the 1113/1114 Order

Debtors—that is, Walter Energy and twenty-two affiliated companies (collectively, "Walter Energy")—produce and export metallurgical coal for the global steel industry, with mineral reserves in the United States, Canada, and the United Kingdom.  (Doc. # 1-3 at 3). "Debtors also extract, process, and market thermal and anthracite coal and produce metallurgical coke and coal bed methane gas." (*Id.*).  The No. 4 and No. 7 mines at Jim Walter Resources, Inc. (one of Walter Energy's affiliated companies) were formerly "the heart of the Debtors' operations." (*Id.*).

On July 15, 2015, due to market forces, Walter Energy was compelled to file petitions for relief under Chapter 11 of the Bankruptcy Code.  (Doc. # 1-3 at 3).  After unsuccessfully attempting to restructure under Chapter 11, Walter Energy marketed its assets in anticipation of a sale pursuant to Section 363 of the Bankruptcy Code.[3]  (*Id.* at 8-12).  There was only one potential buyer.  "After two months of negotiations, . . . Debtors executed an asset purchase agreement . . . with Coal Acquisition, LLC, an entity owned by the First Lien Creditors" (the "Stalking Horse APA").[4]  (*Id.* at 8).  (*See also* Doc. # 28-3 at A668-833).  Coal Acquisition (now known as Warrior Met) agreed to purchase Walter Energy's core Alabama mining operations for

---

[3] In other words, Debtors switched to and anticipated a going-concern sale and a Chapter 11 plan of liquidation.

[4] "A 'stalking horse' contract is a first, favorable bid strategically solicited by the bankrupt company to prevent low-ball offers." *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 239 n. 3 (2d Cir. 2010).  In the Bankruptcy Court, Coal Acquisition was a "stalking horse bidder;" however, because no other bids were made for the purchase of Debtors' assets, it became the "Stalking Horse Purchaser."  (*See* Doc. # 1-3).

6

certain consideration including a $1.15 billion credit bid by the lenders and an additional $185.5 million in cash, trust funding, and assumed liabilities. (Doc. # 1-3 at 8-9). But, under this "Proposed 363 Sale," Coal Acquisition would only purchase these assets if they were free and clear of legacy and current labor costs, and all claims, liens, interests and encumbrances, including the assumption of Coal Act payment responsibilities.[5] (*Id.* at 9-11).

On July 30, 2015, the Bankruptcy Administrator for the Northern District of Alabama appointed members to the Official Committee of Unsecured Creditors. (Doc. # 1-3 at 18). On that same date, the Bankruptcy Court entered an order authorizing the formation of a committee of retired employees pursuant to Sections 1114(c)(2) and 1114(d) of the Bankruptcy Code (the "Section 1114 Committee"). (*Id.*). The UMWA and the United Steel Workers were members of both committees.[6] (*Id.*). The Bankruptcy Court did not appoint a trustee or examiner in the bankruptcy case. (*Id.*).

The UMWA, Debtors, the Section 1114 Committee, and the proposed core assets purchaser (that is, Warrior Met) undertook various negotiations on the CBAs and retiree benefits to which Debtors were beholden, but they reached no agreements before Debtors filed their 1113/1114 Motion in November 2015. (Doc. # 1-3 at 12-15). In fact, five days after entering into the Stalking Horse APA, Debtors withdrew their prior proposal to the UMWA and presented their final proposal. (*Id.* at 13-14). In pertinent part, the final proposal would have required Debtors to provide healthcare and other welfare benefits to laid-off employees up until the Proposed 363 Sale, allowed Debtors to terminate health and welfare benefits for retirees no later than the Proposed 363 Sale closing date, and required the UMWA and the UMWA 1992 Plan

---

[5] The Proposed 363 Sale is named for Section 363(f) of the Bankruptcy Code, which allows for a sale of property "free and clear" of certain interests in that property. *See* 11 U.S.C. § 363(f).

[6] The Coal Act Funds were not members of the Section 1114 Committee.

officials to coordinate "to arrange for the transition of retirees entitled to Coal Act Benefits to the UMWA 1992 Benefit Plan with no loss of benefits." (*Id.*). The UMWA rejected that final proposal, and countered that it would agree to facilitate the termination or modification of the UMWA CBA obligations "only upon" ratification of a new CBA with the proposed buyer that addresses healthcare, among other things. (*Id.* at 14).

After briefing, the Bankruptcy Court issued the 1113/1114 Order on December 28, 2015. It provides, in summary, as follows: Sections 1113 and 1114 contain substantially the same statutory requirements for modification or termination of CBAs and retiree benefits, thus the nine-part *American Provision* test applies to both; both Sections 1113 and 1114 apply in a liquidating Chapter 11 case and Debtors do not need to demonstrate an ability to confirm a liquidating Chapter 11 plan as a condition precedent; Coal Act benefits may be modified or terminated pursuant to Section 1114; Debtors satisfied the statutory requirements of Sections 1113 and 1114 (and satisfied the *American Provision* test); and the balance of equities favors rejection of the UMWA CBA and termination of retiree benefits. (Doc. # 1-3). Objections had been raised by Appellants (and others, including the UMWA and Section 1114 Committee), and were addressed and overruled in the 1113/1114 Order, concerning: (1) the applicability of Sections 1113 and 1114 to a Chapter 11 liquidation, and (2) the modification or termination of Coal Act benefits under Section 1114. (*Id.*). In its December 30, 2015 Order the Bankruptcy Court then amended paragraph 93 of the 1113/1114 Order based upon the Section 1114 Committee's motion to alter the 1113/1114 Order. (Doc. # 1-4).

On January 8, 2016, the Bankruptcy Court issued an Order approving the free and clear sale of Debtors' core assets (the "Sale Order").[7] (Doc. # 28-3 at A632-667). Among other

---

[7] That is, the Order (I) Approving the Sale of the Acquired Assets Free and Clear of Claims, Liens, Interests and Encumbrances; (II) Approving the Assumption and Assignment of Certain Executory Contracts and

things, that Order granted Debtors the right to sell their core assets to Warrior Met free and clear of the UMWA CBA and Coal Act obligations.  (*Id.*).  The parties initially informed this court that the sale of Debtors' core assets (which is affected by both the Sale Order and, at least in part, the 1113/1114 Order) would occur sometime around the end of February or early March 2016. *See United Mine Workers of Am. Combined Benefit Fund v. Walter Energy*, Case No. 2:16-cv-64-RDP (Doc. # 29).  The court was later told in early March 2016 that the sale date had been moved to around the end of March 2016.  The core asset sale commenced as of March 31, 2016. *See United Mine Workers of Am. v. Walter Energy, Inc.*, Case No. 2:16-cv-56-RDP (Doc. # 28); *United Mine Workers of Am. v. Walter Energy, Inc.*, Case No. 2:16-cv-65-RDP (Doc. # 33).

In the meantime, in mid-February 2016, the UMWA withdrew without prejudice its appeals.  *See* Case Nos. 2:16-cv-56-RDP (Doc. # 27), 2:16-cv-65-RDP (Doc. # 32).  Dismissal with prejudice of those appeals was contingent upon the closing of the core asset sale.  *See id.* After the sale closed, the UMWA and Debtors filed joint stipulations of dismissal, and the court dismissed those appeals with prejudice on April 5, 2016.  Case Nos. 2:16-cv-56-RDP (Docs. # 28, 29), 2:16-cv-65-RDP (Doc. # 33, 34).

## III.    Procedural History

Shortly after the Bankruptcy Court issued the Sale Order on January 8, 2016, Appellants unsuccessfully moved in that court for an emergency stay.   (Doc. # 28-3 at A915-A921). Subsequently, both Appellants and the UMWA appealed the Bankruptcy Court's Sale Order and

---

Unexpired Leases; and (III) Granting Related Relief.  (Doc. # 28-3 at A632-667).  This court affirmed the Sale Order on March 8, 2016.  *See United Mine Workers of Am. Combined Benefit Fund v. Walter Energy*, Case No. 2:16-cv-64-RDP (Docs. # 55, 56).   That affirmation and this court's affirmance of a similar Order of sale of Debtors' non-core assets, *see United Mine Workers of Am. Combined Benefit Fund v. Walter Energy*, Case No. 2:16-cv-249-RDP (Docs. # 1-2, 5), were on appeal before the Eleventh Circuit.  On April 5, 2016, the Eleventh Circuit dismissed the Sale Order appeal.  *See* Case No. 2:16-cv-64-RDP (Doc. # 67).  And, on April 20, 2016, the Eleventh Circuit granted the voluntary dismissal with prejudice of the non-core asset Sale Order.  *See* Case No. 2:16-cv-249-RDP (Doc. # 15).

1113/1114 Order, and moved for an emergency stay of the Sale Order.  (Doc. # 1); Case No. 2:16-cv-64-RDP (Doc. # 16); *see also* Case Nos. 2:16-cv-56-RDP, 2:16-cv-65-RDP.  This court denied a stay, *see* Case No. 2:16-cv-64-RDP (Doc. # 26), but granted an expedited briefing schedule for this appeal.[8]  (Doc. # 15).  (After this court denied Appellants' and the UMWA's Motions for Stay, UMWA withdrew its appeals without prejudice, and those appeals have now been dismissed with prejudice.  *See* Case Nos. 2:16-cv-56-RDP (Docs. # 27, 29), 2:16-cv-65-RDP (Docs. # 32, 34)).  What remains is Appellants' present appeal.  Appellants filed an opening brief and a reply brief.  (Docs. # 17, 34).  Debtors filed a responsive brief that Walter Met joined. (Docs. # 28, 29).

## IV.    Standard of Review

A district court reviews the Bankruptcy Court's decision for abuse of discretion.  *In re Hillsborough Holdings*, 127 F.3d 1398, 1401 (11th Cir. 1997); *Steele v. Heard*, 487 B.R. 302, 307 (S.D. Ala. 2013).  When a district court hears an appeal from a bankruptcy court, its job is not to make independent factual findings; rather, the task of fact finding is the purview of the bankruptcy court.  *See* Fed. R. Bankr. P. 7052; *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990).  This court will overturn the Bankruptcy Court's factual findings only if they are "clearly erroneous."  *Hillsborough Holdings*, 127 F.3d at 1401.  Factual findings are clearly erroneous if the court is "left with the definite and firm conviction that the [bankruptcy] court erred."  *In re Walker*, 515 F.3d 1204, 1212 (11th Cir. 2008) (citation and internal quotation marks omitted).  Of course, this court reviews *de novo* a bankruptcy court's legal conclusions.  *In re Tennyson*, 611 F.3d 873, 875 (11th Cir. 2010) (citation omitted); *Consumer Portfolio Servs. v. Coleman*, 342 B.R. 817, 819 (N.D. Ala. 2006).

---

[8] Appellants' motions in the Eleventh Circuit for a writ of mandamus and to stay the sale pending appeal were also denied.  Case No. 2:16-cv-64-RDP (Docs. # 49, 51).

## V.      Analysis

This court has carefully reviewed the Bankruptcy Court's extensive factual findings and determines that they are not "clearly erroneous." *Hillsborough Holdings*, 127 F.3d at 1401. Accordingly, the court will not disturb those findings of fact.

The real issue in this case is whether the Bankruptcy Court had the authority under Sections 1113 and 1114 to order the termination of Debtors' CBA with the UMWA and obligations under the Coal Act. *In re Tennyson*, 611 F.3d 873, 875 (11th Cir. 2010). Debtors also raise jurisdictional challenges to Appellants' ability to bring this appeal.

### A.      This Court Has No Jurisdiction to Consider the Bankruptcy Court's Rejection of the CBA Under Section 1113; But, the Court Has Jurisdiction over the Termination of Coal Act Benefits Pursuant to Section 1114

Debtors argue that Appellants lack standing to appeal the 1113/1114 Order. (Doc. # 28 at 18-22). Alternatively, they argue that the Section 1113 aspects of the 1113/1114 Order rejecting the CBA are moot. (*Id.* at 22-25). Because standing and mootness are jurisdictional, the court must initially address these issues before addressing any aspect of the merits of the briefs filed by the parties. *See CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1269 (11th Cir. 2006) (standing); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (mootness). The court agrees that Appellants lack standing to seek review of the Section 1113 portions of the 1113/1114 Order, and, in any event, disputes over that portion of the Order are moot. But, the court concludes Appellants have standing to challenge the termination of Coal Act benefits under Section 1114.

### 1.      Appellants Do Not Have Standing Concerning Section 1113

The United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. "[T]he core component of standing is an

essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). "'In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims,' and 'the court is powerless to continue.'" *CAMP Legal*, 451 F.3d at 1269 (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999)).

The Supreme Court has instructed that "the irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. A plaintiff (or, as in this case, an appellant) bears the burden of showing "(1) an injury in fact, meaning that an injury is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Granite State Outdoor Advert., Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003). Each element is "indispensable" and "must be supported in the same way as any other matter on which the [appellant] bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

In the context of bankruptcy appeals, the "person aggrieved doctrine restricts standing more than Article III standing, as it allows a person to appeal only when they are 'directly and adversely affected pecuniarily by the order.'" *See Westwood Cmty. Two Assoc., Inc. v. Barbee (In re Westwood Cmty. Two Assoc., Inc.)*, 293 F.3d 1332, 1335 (11th Cir. 2002) (quoting *In re Troutman Enters., Inc.*, 286 F.3d 359, 364 (6th Cir. 2002)). In other words, "the person aggrieved doctrine limits standing to appeal a bankruptcy court order to those individuals who have a financial stake in the order being appealed." *Id.* (citations omitted). A party has a

financial stake in the bankruptcy court's order when that order "diminishes their property, increases their burdens or impairs their rights."  *Id.* (quoting *Troutman*, 286 F.3d at 364).

Here, the court concludes Appellants lack standing to pursue an appeal of the Bankruptcy Court's rejection of the CBA agreement pursuant to Section 1113.  First, as the party invoking this court's jurisdiction, Appellants bear the burden of establishing the three elements that would permit the existence of jurisdiction.  *See Lujan*, 504 U.S. at 561.  Yet they have offered no arguments in reply to Debtors' challenge to their standing to appeal the Section 1113 aspects of the 1113/1114 Order, and do not attack the Section 1113 portion of that Order in their reply. (*See* Doc. # 34).  In this respect, Appellants have not demonstrated the three *Lujan* elements. Second, because Section 1113 allows for the modification or rejection of a CBA, and Appellants are funds providing retiree benefits pursuant to the Coal Act, the Bankruptcy Court's termination of the UMWA CBAs does not render Appellants "persons aggrieved."  They have not shown any financial stake in the CBAs.  Therefore, Appellants lack standing to appeal the Bankruptcy Court's Section 1113 determinations in the 1113/1114 Order.

The Section 1114 component of the 1113/1114 Order is a different matter, however. Appellants have standing to appeal the Section 1114 aspect of the 1113/1114 Order.[9]  To be sure, the Coal Act Funds were not members of the Section 1114 Committee.[10]  (*See* Doc. # 1-3 at 18).

---

[9] Moreover, the court concludes that Appellants' challenge to the Section 1114 Coal Act benefits termination is not rendered moot simply based on the withdrawal of the UMWA from the appeals.  Whether it is equitably moot is not an issue properly under consideration before this court, even though Debtors contend it likely is. (Doc. # 28 at 23-24).  (Equitable mootness is a "pragmatic principle grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable."  *In re Citation Corp.*, 371 B.R. 518, 522 (N.D. Ala. 2007) (quoting *MAC Panel Co. v. Va. Panel Corp.*, 283 F.3d 6222, 625 (4th Cir. 2002))).  But, their argument focuses primarily on the UMWA and the CBAs, which this court concludes Appellants in this case cannot challenge. (*See id.*).  The two sentences otherwise addressing the Coal Act Funds and the 1113/1114 Order do not provide sufficient argument for the court to determine whether Appellants' present appeal is equitably moot.

[10] The court addresses *infra* at section V(C) of this opinion the Coal Act Funds' argument that they cannot be an "authorized representative" under Section 1114 because Coal Act obligations and benefits cannot be negotiated. (*See* Doc. # 34 at 2).

But, they assert, and have, a financial stake in the 1113/1114 Order.  The Coal Act Funds rely on Coal Act premiums from various operators.  Even if the Coal Act provides means for backstop funding in case of a diminished number of operators with Coal Act obligations, that statutory backstop does not deprive Appellants of their interest "directly and adversely affected pecuniarily by" the Bankruptcy Court here.  *Westwood Cmty. Two*, 293 F.3d at 1335. Accordingly, the Coal Act Funds are "persons aggrieved" by the Section 1114 termination of Coal Act benefits in the 1113/1114 Order, and have standing to appeal it.

### 2.    Alternatively, the Parties' Section 1113 Dispute Is Now Moot

Debtors contend that, in any event, Appellants cannot appeal the Section 1113 termination in the 1113/1114 Order because that issue is moot due to Debtors' settlement with the UMWA.  The court agrees and addresses this issue below.

Under Section 1113, a "debtor in possession, . . . may assume or reject a collective bargaining agreement only in accordance with the provisions of this section."  11 U.S.C. § 1113(a).  After filing its Chapter 11 petition, and before filing an application seeking rejection of a CBA, a debtor in possession must "make a proposal to the authorized representative of the employees covered by such an agreement. . . ."  *Id.* at 1113(b)(1)(A).  In the bankruptcy proceedings underlying this appeal, the UMWA was the authorized representative of the employees covered by the now-rejected CBA.[11]  (*See* Doc. # 1-3 at 23 (citing *In re American Provision Co.*, 44 B.R. 907, 909 (Bankr. D. Minn. 1984)).

---

[11] Moreover, it logically follows that the UMWA— that is, the union— would be the properly interested party in negotiating and litigating regarding the rejected CBA, not the Coal Act Funds' trustees.  And, the UMWA brought its own appeal of the 1113/1114 Order, but then settled with Debtors, resulting in the dismissal with prejudice of that appeal.  Furthermore, in its merits brief, Appellants make Section 1113 arguments on behalf of the UMWA and not themselves.  (*See* Doc. # 17 at 26-29; *see also* 2:16-cv-56-RDP (Docs. # 1, 1-3, 27, 29)).  Thus, the UMWA (that is, the authorized representative of the employees covered by the now-rejected CBA) is no longer part of this or any other appeal of the 1113/1114 Order.  That settlement and dismissal with prejudice were events occurring subsequent to the filing of the Chapter 11 petition and 1113/1114 Order appeals.  Because these events

**B.      Section 1114 in Chapter 11 Liquidation**

Appellants next contend that the plain language of Section 1114 expressly prohibits its application to a Chapter 11 liquidation like the one here.  *See* 11 U.S.C. §§ 1114(f)(1)(A), (g)(3) (stating "such modification is necessary to permit the reorganization of the debtor"); *see also* 11 U.S.C. § 1113(b)(1)(A) (same).[12]  The court disagrees.

Section 1114 provides in pertinent part as follows:

(f)(1) Subsequent to filing a petition and prior to filing an application seeking modification of the retiree benefits, the trustee shall—
 (A) make a proposal to the authorized representative of the retirees, . . . which provides for those necessary modifications in the retiree benefits that are *necessary to permit the reorganization of the debtor*, . . . .

(g) The court shall enter an order providing for modification in the payment of retiree benefits if the court finds that—

 (1) the trustee has, prior to the hearing, made a proposal that fulfills the requirements of subsection (f);
 (2) the authorized representative of the retirees has refused to accept such proposal without good cause; and
 (3) such modification is *necessary to permit the reorganization of the debtor*. . . .

11 U.S.C. § 1114 (emphasis added).  Appellants argue that the use of the phrase "necessary to permit reorganization" means that Section 1114 cannot apply to Debtors, whose Chapter 11 plan is to liquidate its assets.[13]  (Docs. # 17, 34).  In support of their argument, Appellants point to the

---

"deprive the court of the ability to give the plaintiff or appellant meaningful relief, then [that portion of] the case is moot and must be dismissed."  *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001) (citations omitted).

[12]  The court has determined that Appellants lack standing to attack the Section 1113 aspects of the Bankruptcy Court's 1113/1114 Order, and, in any event, that those issues are moot.  Nevertheless, the court examines case law regarding Section 1113 in the Chapter 11 liquidation context because Sections 1113 and 1114 contain "substantially the same" requirements, and the case law construing those sections borrow from each other.  *In re Horizon Resources Co.*, 316 B.R. 268, 281 (Bankr. E.D. Ky. 2004).  Thus, although the court has determined that it lacks jurisdiction to review Appellants' argument that Section 1113 does not apply in Chapter 11 liquidations, the conclusion that Section 1114 applies in Chapter 11 liquidations necessarily means that Section 1113 also applies.

[13]  Appellants repeatedly assert that the Bankruptcy Court's use of Section 1114 essentially and impermissibly places it in a Chapter 7 context.  (*See* Doc. # 34).  Even if the underlying bankruptcy ultimately is converted to Chapter 7—and, to be clear, it has not been so converted at this point—Appellants' assertion ignores Chapter 11's anticipation of liquidation pursuant to a Chapter 11 plan.  *See, e.g., Fla. Dept. of Revenue v. Piccadilly*

Eleventh Circuit's instruction that "[i]t is well-settled that courts are required to apply the plain meaning canon of statutory construction in interpretation of the Bankruptcy Code." *In re Am. Steel Prod., Inc.*, 197 F.3d 1354, 1356 (11th Cir. 1999).

Indeed, "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989). However, "a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute." *Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983). "Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Here, a *Dolan* analysis leads the court to conclude that "necessary to permit the reorganization of the debtor" applies when the debtor is liquidating under Chapter 11. 11 U.S.C. §§ 1114(f)(1)(A), (g)(3).

The statutory title of Chapter 11 is "Reorganization." *See* 11 U.S.C. ch. 11. But, "[a]lthough the central purpose of Chapter 11 is to facilitate reorganizations . . ., Chapter 11 expressly contemplates liquidations." *Fla. Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 36 n. 2 (2008); *see also In re Holmes*, 298 B.R. 477, 484 (Bankr. M.D. Ga. 2003) (quoting *United States v. Deer Park, Inc. (In re Deer Park, Inc.)*, 136 B.R. 815, 818 (9th Cir. BAP 1992), *aff'd* 10 F.3d 1478 (9th Cir. 1993)) ("Although the word 'reorganization' might commonly bring to mind ongoing operations, Congress explicitly placed language providing for liquidation within Chapter 11, which is titled "Reorganization."). Section 1129(a)(11) of the

---

*Cafeterias, Inc.*, 554 U.S. 33, 36 n. 2 (2008) (citing 11 U.S.C. § 1129(a)(11)) ("Although the central purpose of Chapter 11 is to facilitate reorganizations rather than liquidations (covered generally by Chapter 7), Chapter 11 expressly contemplates liquidations."); *see also In re Mirabilis Ventures, Inc.*, 2010 WL 1644915, at *5 (M.D. Fla. Apr. 21, 2010) ("Numerous cases recognize that a liquidation under Chapter 11 differs from one under Chapter 7").

Bankruptcy Code provides that a court shall confirm a Chapter 11 plan if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  *See also* 11 U.S.C. § 1123(b)(4) (a plan under Chapter 11 may "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests").  "Had Congress not intended to include liquidation as an acceptable type of reorganization plan, then presumably all provisions dealing with liquidation would fall within Chapter 7. . . .  We must therefore assume Congress placed this provision in Chapter 11 intentionally."  *Holmes*, 298 B.R. at 484 (quoting *Deer Park*, 136 B.R. at 818).  "A Chapter 11 plan, even though a liquidating plan, must still conform to the statutory requirements of any other Chapter 11 reorganization."  *Id.*  Therefore, this "court should go beyond the literal language of [Section 1114 because] reliance on that language would defeat the plain purpose of the statute."  *Bob Jones Univ.*, 461 U.S. at 586.

Further, although there is not controlling case law on point, this court's interpretation is bolstered by case law from other courts concluding that Section 1114 applies to Chapter 11 liquidations.  *See Horizon Nat. Res.*, 316 B.R. at 281-82 ("Sections 1113 and 1114 apply in liquidation Chapter 11 cases.") (collecting cases).  For example, the court in *In re Garfinckels, Inc.*, determined that "Section 1114 simply was not written with a liquidating Chapter 11 plan in mind."  124 B.R. 3, 4 (Bankr. D. D.C. 1991) (quoting statement of Senator Metzenbaum from 134 Cong. Rec. H3, 486 (May 23, 1988).  Nevertheless, the *Garfinckels* court, calling Section 1114 "inartfully written at best," held that "[t]he obvious congressional inattentiveness to liquidating Chapter 11 cases does not make § 1114 inapplicable to such cases."  *Id.*

17

Likewise, after reaching the "inescapable" conclusion that Section 1114 cannot apply in Chapter 7 bankruptcies, the court in *In re Ionosphere Clubs, Inc.* held that, legislative history aside, Section 1114 "is an unrestrained provision in Chapter 11 and cannot be ignored."  134 B.R. 515, 521 (Bankr. S.D.N.Y. 1991).  That court continued: "Since there are no material differences between the mechanics of liquidation in Chapter 11 or Chapter 7, Congress could not have intended the results of such liquidations to differ so markedly by enhancing the claim of retirees in one instances (a Chapter 11 liquidation) but not [in] the other (a Chapter 7 liquidation)."  *Id.* at 523.  And, this court agrees with the *Ionosphere Clubs* court's conclusion: "absent corrective or clarifying legislation [which has not been passed], [Section 1114]'s placement in Chapter 11 requires its application to liquidating Chapter 11 cases."  *Id.* at 524.

Appellants' request for this court to hold that Section 1114's language means that it can never apply in a Chapter 11 liquidation, although passionately argued, ignores the Supreme Court's directives concerning statutory interpretation.  Applying those directives, this court concludes that Section 1114 applies to Chapter 11 liquidations.

### C.    Section 1114 and Rejection of Coal Act Benefits

Section 1114(a) provides as follows:

> For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents . . . under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under [Chapter 11 of the Bankruptcy Code].

11 U.S.C. § 1114(a).

Appellants argue that the "retiree benefits" defined by Section 1114(a) "are certain, *private* obligations a debtor may have contracted for."  (Doc. # 17 at 22 (emphasis in original)).  Appellants do not point the court to any law supporting this contention.  Instead, they suggest

that the court read the clause "maintained or established in whole or in part by the debtor" with an emphasis on the prepositional phrase "by the debtor."  (*Id.*).  Appellants contend that reading the clause in this manner implies that a debtor cannot maintain or establish a statutory obligation like Coal Act premiums.  (*Id.*).  The court disagrees.

"The starting point in every case involving construction of a statute is the language itself."  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring); *see also Am. Steel Prod.*, 197 F.3d at 1356.  Appellants' suggested reading overlooks the plain language of Section 1114.[14]  The clause at issue reads "maintained <u>or</u> established in whole or in party by debtors"; it does not require that the plan, fund, or program be "established by and thereafter maintained by debtors."  *See* 11 U.S.C. § 1114(a) (emphasis added).  Although the Coal Act Funds may be *established* by statute, they are *maintained* by Debtors.  *Horizon Nat. Res.*, 316 B.R. at 276 ("even if the plan, fund, or program was 'established' by statute, it is 'maintained' by the debtors"). *Cf. also Feinstein v. Lewis*, 477 F. Supp. 1256, 1260 (S.D.N.Y. 1979) (interpreting an ERISA provision concerning plans "established or maintained" by a government entity and holding that a plan funded by the government is "maintained" by it), *aff'd*, 622 F.2d 573 (2d Cir. 1980); *accord Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 920 (2d Cir. 1987) (same).  Congress's decision to use the disjunctive "or" is imperative to the conclusion here that Debtors must either establish *or* maintain (that is, fund) the Coal Act Plans.  *See Feinstein*, 477 F. Supp. at 1259-60.

---

[14] And, here, the plain language reading and application of "maintained or established in whole or in part by the debtor" does not defeat the purpose of Section 1114, or of Chapter 11 of the Bankruptcy Code.  11 U.S.C. § 1114(a).

Accordingly, because Debtors maintained in part the Coal Act Plans by funding them, the Plans are retirement benefits subject to Section 1114.[15]  *See* 26 U.S.C. §§ 9704, 9711, 9712.

Even accepting this construction, Appellants argue that the statutory context supports their litigation position.  (Doc. # 17 at 22) (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 7 (2011) ("interpretation of this phrase 'depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis'" (quoting *Dolan*, 546 U.S. at 486)).  Their argument goes something like this: because Section 1114 mandates that a debtor negotiate proposed changes to retiree benefits with the affected retirees' "authorized representative," Section 1114 cannot apply to Coal Act benefits since the language of the Coal Act implies they cannot be negotiated.[16] (Doc. # 17 at 22-23) (citing 11 U.S.C. § 1114(b), (f)(2), (f)(3)(1)(A), (g)(1)-(2); 26 U.S.C. § 9722).

Again, Appellants' argument overlooks the plain language of Section 1114, and over reads the language in the Coal Act.  Although Appellants contend that "Congress specifically precluded companies from negotiating to avoid the Coal Act's requirements," they do not point

---

[15] Moreover, although the nomenclature it is not controlling here, the 1992 Plan and Combined Benefit Fund are both called a "private plan" in the applicable Coal Act sections establishing them.  *See* 26 U.S.C. §§ 9702, 9712.

[16] In their reply brief, Appellants assert that neither the UMWA, the United Steel Workers, nor the Section 1114 Committee "is a representative of the Coal Act Funds," so none "of those entities [can] negotiate with respect to non-negotiable Coal Act obligations."  (Doc. # 34 at 5).  However, upon review of the appellate record, the court has not located, nor have Appellants pointed to any place in the record, that Appellants raised objections with the Bankruptcy Court that none of the foregoing entities could represent them in negotiations.  (*See, e.g.*, Doc. # 17-6 at A486–A532, Doc. # 17-10 at A841–A1115).  Thus, Appellants failed to preserve that issue for appeal, and it is not properly before the court for consideration.  *See In re Lorenzo*, 606 Fed. Appx. 548, 551 n. 3 (holding that because appellant in appeal from a bankruptcy did not raise an argument in the bankruptcy court but instead raised it first in the district court the appellant waived that argument) (citing *Formby v. Farmers & Merchants Bank*, 904 F.2d 627, 634 (11th Cir. 1990) ("As a general rule, an appellate court will not consider a legal issue or theory raised for the first time on appeal.")).

the court to any language in the Coal Act or in Section 1114 supporting that contention.[17]  (Doc. # 17 at 23).  They also do not cite any controlling or on-point case law for the proposition; instead, they merely point to the underlying purpose of the Coal Act.[18]  Even if Congress intended to protect retirees subject to benefits under the Coal Act Plans, the language of the statutes written by Congress simply does not support Appellants' specific-preclusion argument. Congress said nothing in that respect.

In areas where Congress has not spoken through the plain text of a statute, the court must use the rules of statutory construction.  The Supreme Court has instructed that, "'when two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'"  *J.E.M. AG Supply, Inc. v.*

---

[17] To be sure, Appellants cite to both 26 U.S.C. § 9722 and *Eastern Enterprises v. Apfel*, 524 U.S. 498, 501 (1998).  (Doc. # 17 at 23).  But neither that statutory provision nor that case support Appellants' contention.  Section 9722 by its plain language requires Coal Act obligations to continue applying to sham transactions where the "principal purpose . . . is to evade or avoid liability under" the Coal Act.  26 U.S.C. § 9722.  Here, Debtors followed Congress' statutory requirements set forth in Section 1114, and sought review by the Bankruptcy Court.  It would stretch the legal imagination to conclude that Debtors' principal purpose of seeking a modification or termination of Coal Act (and other retiree benefits) through Chapter 11 in the Bankruptcy Court was to avoid Coal Act obligations. And, in any event, Section 9722 actually makes it more difficult for signatories to plans under the Coal Act to simply withdraw from those obligations, because the Coal Act was established to tackle the very problem of coal mining operators withdrawing from retiree funding.  *See Apfel*, 524 U.S. at 511-15 (explaining history of Coal Act). As the Supreme Court recently stated, "even the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text."  *Nichols v. United States*, No. 15-5238, -- S. Ct. --, -- U.S. --, slip op. at 8 (U.S. Apr. 4, 2016) (quoting *Kloeckner v. Solis*, 138 S. Ct. 596, 607 n. 4 (2012)).

[18] Appellants suggest that *In re Sunnyside Coal Co.*, 143 F.3d 1273 (10th Cir. 1998), demonstrates that Coal Act obligations are "non-negotiable" and, therefore, "no one is authorized to modify them."  (Doc. # 34 at 4). However, *Sunnyside Coal* is easily distinguishable from this case.  First, the underlying bankruptcy in *Sunnyside Coal* had been converted from Chapter 11 to Chapter 7, so Section 1114 could not apply in that case.  *See* 143 F.3d at 1276.  Second, Appellants' selective quotation from that case referring to "the undeniably involuntary nature of these assessments as crafted by the Coal Act" concerns the Tenth Circuit's holding that Coal Act premiums are qualified as taxes.  *Sunnyside Coal*, 146 F.3d at 1278.  The manner in which the premiums are classified is inapposite to whether Coal Act premiums may be modified under Section 1114, particularly given that this court has already concluded that even if Coal Act premiums are constitutionally considered taxes, they are not *per se* taxes for other purposes.  *See* Case No. 2:16-cv-64-RDP (Doc. # 55 at 9-10).  And, even if Coal Act premiums were considered taxes for other purposes, the Fourth Circuit has held that these premiums, as taxes, may be terminated pursuant to a different section of the Bankruptcy Code than that at issue here (*i.e.*, 11 U.S.C. § 363(f)).  *See United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996).

*Pioneer Hi-Bred Intl., Inc.*, 534 U.S. 123, 143-44 (2001) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).

> "It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum," unless the later statute "'expressly contradict[s] the original act'" or unless such a construction is "'absolutely necessary . . . in order that [the] words of [the later statute] shall have any meaning at all.'" "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."

*Traynor v. Turnage*, 485 U.S. 525, 547-48 (1988) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976); *Mancari*, 417 U.S. at 551) (changes and quotations in original and internal citations omitted).  Accordingly, and as applicable here, the analysis provided by the Bankruptcy Court for the Eastern District of Kentucky in *In re Horizon Natural Resources* is on point:

> [T]he Coal Act, enacted in 1992, does not "expressly contradict" § 1114 of the Bankruptcy Code, enacted in 1988.  Section 1114 deals with a narrow, precise, and specific subject: it governs the modification of retiree benefits only when the former employer is a debtor in a Chapter 11 case and only to the extent necessary for the reorganization effort [which, as concluded above, includes a Chapter 11 liquidation].  The Coal Act, on the other hand, [] "covers a more generalized spectrum" in that it does not specify whether the former employer is or is not a debtor in possession.  The application of § 1114 to retiree benefits covered by the Coal Act does not deprive the latter statute of "any meaning at all:" the Coal Act would remain fully applicable where the last signatory operator is not a Chapter 11 debtor in possession or cannot satisfy § 1114's requirements.

316 B.R. at 276.

Moreover, Section 1114 supports the same goal as the Coal Act Plans: "the protection of retiree benefits."[19]  *Horizon Nat. Res.*, 316 B.R. at 276 ("The intent of each statute is the same. . .

---

[19] Any additional funding problems for Coal Act benefits that arise from Debtors' termination or of their Coal Act obligations pursuant to Section 1114 should be addressed by Congress, not this court.

.").  Section 1114 does not allow a debtor to simply withdraw from maintaining retiree benefits.

Again, as the court explained in *Horizon Natural Resources*,

> In enacting § 1114, Congress sought to minimize the impact of Chapter 11 on retirees while, at the same time, recognizing that modifications of retiree benefits may be necessary to the debtor's reorganization.  Congress balanced these competing interests by permitting retiree benefit modifications only if good faith attempts to reach a compromise fail, the modifications are necessary to the reorganization, all parties are treated fairly and equitably, and the balance of the equities clearly favors permitting the modifications.  While the Coal Act imposes a general prohibition against certain retiree benefit modifications, the Bankruptcy Code agrees with that general prohibition but establishes an extremely limited exception.

316 B.R. at 277.

> If Congress wished to exclude Coal Act benefits from the reach of § 1114 of the bankruptcy law, it could have done so by providing exceptions to the court's authority to modify such obligations or by limiting the definition of retiree benefits in the Bankruptcy Code or by providing express language in the Coal Act that obligations remain unaffected by operation of the Bankruptcy Code.

*Id.* at 279 (quoting *In re Lady H Coal Co.*, 199 B.R. 595, 603 (S.D. W. Va. 1996), *aff'd*, *United Mine Workers of Am. 1992 Benefit Plan v. Leckie Smokeless Coal Co. (In re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996)).  But, Congress did none of these things.  Therefore, the court concludes that Section 1114 allows the modification and termination of Coal Act retiree benefits.  Accordingly, the Bankruptcy Court's well-documented and reasoned decision demonstrating that the requirements of Section 1114 were met is due to be affirmed.

## D.     The Tax Anti-Injunction Act Does Not Bar the Bankruptcy Court's Jurisdiction

Finally, Appellants argue the Tax AIA precludes the Bankruptcy Court's jurisdiction and, thus, it did not have the power to terminate Debtors' Coal Act obligations.  (Doc. # 17 at 25-26, Doc. # 34 at 10-11).  Debtors counter that argument by asserting that Appellants have raised the Tax AIA argument for the first time on appeal, and, in any event, that the Tax AIA is

inapplicable to Section 1114. (Doc. # 28 at 35-36). The court has previously addressed these questions in the context of the Sale Order, and concluded the Tax AIA does not operate as a bar to the Sale Order. *See* Case No. 2:16-cv-64-RDP (Doc. # 55 at 7-12). That reasoning is equally applicable here in addressing the parties' arguments concerning Section 1114 (instead of Section 363), and the court adopts it in this appeal.[20] Accordingly, the court concludes that the Tax AIA did not deprive Bankruptcy Court of the jurisdiction necessary to enter the 1113/1114 Order.

## VI.   Conclusion

For all these reasons, the court concludes that the Bankruptcy Court had jurisdiction and entered a valid termination of retirement benefits pursuant to Section 1114, and that this court lacks jurisdiction to consider Appellants' challenge to the Bankruptcy Court's ruling under Section 1113. Accordingly, the 1113/1114 Order is due to be affirmed. A separate order will be entered.

**DONE** and **ORDERED** this May 18, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[20] To be sure, some of the case law relied upon in that analysis concerned 11 U.S.C. §§ 363 and 365 (*i.e.*, *In re Leckie Smokeless Coal Co.*, 99 F.3d 573. Case No. 2:16-cv-64-RDP (Doc. # 55 at 11-12). But, those statutory sections do not alter the analysis of the Tax AIA's application here. Section 1114 allows for the modification or termination of retiree benefit payments; Section 365 allows for the assumption or rejection of any executory contract or unexpired lease; and Section 363 allows for the use, sale, or lease of property, including a free and clear sale. 11 U.S.C. §§ 363, 365, 1114. All of these sections help further the administration of a bankrupt estate.

Further, and in any event, it is immaterial for purposes of the Tax AIA under which section of the Bankruptcy Code Coal Act premiums are terminated so long as the Bankruptcy Court had lawful authority to terminate the premiums. This court has already affirmed the Bankruptcy Court's ordering of the sale of Debtors' assets free and clear (under Section 363(f)) of Coal Act obligations. Cases no. 2:16-cv-64-RDP (Docs. # 55, 56), 2:16-cv-249 (Doc. # 5). The court here affirms the Bankruptcy Court's termination of Coal Act benefits under Section 1114.